UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

KINSALE INSURANCE COMPANY,

    Plaintiff,

v.                                  CASE NO:  6:24-cv-732-JA-LHP

MILLENNIA HOUSING MANAGEMENT,
LTD, LLC, JERNIGAN GARDENS
FL TC, LP, and DEVIN GAINES,

    Defendants.

_____/

**KINSALE INSURANCE COMPANY'S MOTION
FOR FINAL DEFAULT JUDGMENT**

KINSALE INSURANCE COMPANY ("Kinsale"), pursuant to Fed. R. Civ. P.

55, moves for final default judgment against  DEVIN GAINES, and in support

states:

**INTRODUCTION**

Devin Gaines was shot by an armed assailant at the apartment complex

owned by Jernigan and managed by Millennia. He blames Millennia and Jernigan

for failing to provide adequate security. The policy Millennia and Jernigan

purchased from Kinsale includes a broad Assault and Battery Exclusion that

summarily eliminates coverage for "any claim or 'suit' for 'bodily injury' … arising

out of, related to, or, in any way involving any actual or alleged assault, battery,

harmful or offensive contact, or threat, whether provoked or unprovoked." Based

on the allegations by Gaines as compared to the terms and conditions of the policy,

along with the stipulation of no coverage by Millennia and Jernigan and the

Clerk's default against Gaines, Kinsale is entitled to a final default judgment.

## STATEMENT OF UNDISPUTED FACTS

*The Underlying Action*

1.      Devin Gaines filed suit against Millennia Housing Management LTD,

LLC ("Millennia") and Jernigan Gardens FL TC, LLC ("Jernigan") in circuit court

in Orange County, Florida, over a shooting at an apartment complex called

Jernigan Apartments. (DE 24-2.)

2.      Gaines sued Jernigan as the owner and Millennia as the property

manager. (*Id*. ¶¶4, 5.)

3.      In his complaint, Gaines alleged "On September 22, 2023, he was an

invitee and rightfully on the premises." (*Id*., ¶8.)

4.      "On the date of the incident, an armed assailant shot [Gaines] several

times." (*Id*., ¶9.)

5.      Gaines alleges Millennia and Jernigan "held out its premises as safe

and secure residential premises, where tenants and their guests could reside and

visit without fear of attack or criminal assault." (*Id.*, ¶10.)

6.      Millennia and Jernigan allegedly knew of the "history of criminal

activity" at the complex and, accordingly, should have recognized the "likelihood

of criminal activity to endanger" tenants like Gaines. (*Id.*, ¶¶12, 13.)

7.      They nonetheless "did not have security measures to protect" people

like Gaines from this type of "attack." (*Id.*, ¶14.)

8.      According to Gaines, Millennia and Jernigan "should have required

that it [sic]required security measures to protect" people like him. (*Id.*, ¶15.)

***The Kinsale Policy***

9.      Kinsale is a surplus liens insurer. Millennia and Jernigan could not

obtain insurance through the admitted market, so as a last resort, they applied for

insurance through the surplus lines insurance market.[1]

---

[1] "Surplus lines insurance is a type of insurance available when, due to the nature and severity of the risk, an insured cannot obtain coverage from insurers authorized to do business in the state." *Klopman v. Zurich Am. Ins. Co. of Illinois*, 233 Fed. Appx. 256, 258 n.1 (4th Cir. 2007). In other words, surplus lines is insurance of last resort for distressed or problematic risks. *United Capitol Ins. Co. v. Kapiloff*, 488, 491 (4th Cir. 1998) ("Surplus lines are substandard risks that standard markets generally do not handle."); *see also Raven Envtl. Restoration Servs., LLC v. United Nat'l Ins. Co.*, 489 F. Supp. 3d 1372, 1376 (S.D. Fla. 2020) (noting a surplus lines insurer often has "more restrictive terms or exclusions on its policies.").

10.     Millennia and Jernigan applied for and purchased a surplus lines commercial general liability policy from Kinsale, bearing Policy Number 0100198195-1, and effective from 07/01/2023 to 07/01/2024. (DE 24-4.)

11.     The policy includes the following Assault and Battery Exclusion:

### EXCLUSION - ASSAULT, BATTERY, ABUSE, OR MOLESTATION

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE**

The following exclusion is added to this Policy:

This insurance does not apply to any claim or "suit" for "bodily injury", "property damage", or "personal and advertising injury" arising out of, related to, or in any way involving any actual or alleged assault, battery, abuse, or molestation. Assault, battery, abuse, or molestation includes, but is not limited to, any conduct, physical act, gesture, sexual contact (whether or not consensual), sexual molestation, sexual or physical assault or battery, sexual abuse, sexual harassment or exploitation, harmful, unwanted or offensive contact, or spoken or written words of a sexual or physically violent nature, whether provoked or unprovoked.

This exclusion includes but is not limited to:

(1)     The prevention or suppression of, or the failure to suppress or prevent any assault, battery, abuse, or molestation;

(2)     The failure to provide an environment safe from any assault, battery, abuse, or molestation, or the failure to warn of the

dangers of the environment that could contribute to any assault, battery, abuse, or molestation;

(3)     The selling, servicing or furnishing of alcoholic beverages resulting in any assault, battery, abuse, or molestation;

(4)     The reporting or failing to report to the proper authorities;

(5)     Conducting or failing to conduct an investigation of any assault, battery, abuse, or molestation;

(6)     Injury or damage committed while using reasonable force to protect persons or property or acting in self-defense;

(7)     Providing or failing to provide first aid or medical treatment, or otherwise handling or responding after there has been any assault, battery, abuse, or molestation;

(8)     Any assault, battery, abuse, or molestation, whether caused by, or at the instigation, instruction, direction, or due to the negligence of the insured, the insured's employees, agents, patrons, customers, or any other person arising from any causes whatsoever; or

(9)     The negligent hiring, employment, training, supervision, or retention of any "employee" or agent of any insured with respect to items **(1)** through **(8)** above.

This exclusion applies regardless of fault or intent and regardless of the particular cause of action.

This exclusion applies to any claim or "suit" regardless of whether assault, battery, abuse or molestation is the initial precipitating cause or is in any way a cause, and regardless of whether any other actual or alleged cause contributed concurrently, proximately, or in any sequence, including whether any actual or alleged "bodily injury",

Page 5 of 16

"property damage", or "personal and advertising injury" arises out of a chain of events that includes any assault, battery, abuse or molestation.

For purposes of this endorsement, **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions**, item **a. Expected or Intended Injury** is deleted and replaced with the following:

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

(*See* DE 24-4, Pg. 68-9.)

### *Stipulation of No Coverage by the Insureds*

12.    On 04/19/2024, Kinsale initiated this coverage action against Gaines, as well as Millennia and Jernigan. (*See* DE 1.)

13.    Millennia and Jernigan assessed the situation and agreed there was no coverage under the Kinsale policy. They filed a stipulation of no coverage on 08/08/2024. (DE 46.)

14.    Gaines never responded to Kinsale's complaint; accordingly, Kinsale obtained a Clerk's default against him on 07/29/2024. (DE 44.)

## ARGUMENT AND CITATION OF AUTHORITY

### Standard of Inquiry

Federal Rule of Civil Procedure 55(b)(2) authorizes a court to enter a default judgment against a defendant who fails to plead or otherwise defend. A default judgment is warranted when the well-plead allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and there is sufficient basis in the pleading for the particular relief sought. *See Tyco Fore & Sec., LLC v. Alcocer*, 218 Fed. Appx. 860, 863 (11th Cir. 2007).

### Standard for Duty to Defend

In deciding whether an insurer has a duty to defend or not, courts only "examine the allegations in the underlying complaint filed against the insured." *Maryland Cas. Co. v. Smartcop, Inc.*, 2012 WL 4344571, at *2 (S.D. Fla. Sept. 21, 2012). If the allegations in the complaint show that no coverage exists or a policy exclusion applies, there is simply no duty to defend. *Md. Cas. Co. v. Fla. Atl. Orthopedics, P.L.*, 771 F. Supp. 2d 1328, 1332 (S.D. Fla. 2011), *aff'd*, 469 F. App'x 722 (11th Cir. 2012). The allegations in the complaint exclusively determine the duty to defend, even if they may be factually incorrect or without merit. *See underwriters at Lloyd's, London v. SDT Enters.*, 2005 WL 816332, at *3 *M.D. Fla. Apr. 27, 2005).

Put simply, "[t]he duty to defend does not hinge on true facts that give rise to a cause of action against the insured, the insured's version of the facts, or the insured's defenses to the underlying complaint." *Liberty Mut. Fire Ins. v. Mark Yacht Club on Brickell Bay, Inc.*, 2009 WL 2633064, at *3 (S.D. Fla. Aug. 25, 2009). And if there is no duty to defend, there is no duty to indemnify. *See Arch Specialty Ins. Co. v. Zicos, Inc.*, 2020 WL 13348681, at *2 (S.D. Fla. June 30, 2020).

**Standard for Policy Interpretation**

Under Florida law, "the interpretation of language in an insurance policy is a question of law[.]" *Northside Marina Ventures v. Lexington Ins. Co.*, 2007 WL 2316502, at *2 (S.D. Fla. Aug. 9, 2007). "If a policy provision is clear and unambiguous, it should be enforced according to it terms whether it is a basic policy provision or an exclusionary provision." *Zicos*, 2020 WL 13348681, at *2 (quoting *Phila. Indem. Ins. v. Fla. Mem'l Univ.*, 307 F. Supp. 3d 1343, 1347 (S.D. Fla. 2018)). "When a term in an insurance policy is undefined, it should be given its plain and ordinary meaning, and courts may look to legal and non-legal dictionary definitions to determine such meaning." *Deutsch v. Geico Gen. Ins.*, 284 So.3d 1074, 1076 (Fla. 4th DCA 2019); *see also Gen. Fid. Ins. Co. v. Foster*, 808 F. Supp. 1315, 1320 (S.D. Fla. 2011) ("When policies do not define a term, courts may look to alternate

sources as the dictionary to give the words their plain meaning."). And as this learned Court knows well, "common sense" is always the touchstone for interpreting a policy. *Travelers Indem. Co. v. Richard McKenzie & Sons, Inc.*, 10 F. 4th 1255, 1264 (11th Cir. 2021).

## I.   THERE IS NO COVERAGE UNDER THE POLICY'S ASSAULT AND BATTERY EXCLUSION.

The policy includes an Assault and Battery Exclusion that provides the "insurance does not apply to any claim or 'suit' for 'bodily injury' … arising out of, related to, or, in any way involving any actual or alleged assault, battery, harmful or offensive contact, or threat, whether provoked or unprovoked." (DE 24-4, Pg. 68.) The exclusion likewise eliminates coverage for "the failure to suppress or prevent any assault, battery, harmful or offensive contact, or threat." (*Id.*)

It should come as no surprise the policy Millennia and Jernigan purchased from Kinsale includes an Assault and Battery Exclusion. Assault and Battery Exclusions "are commonly included in CGL policies issued to bars, restaurants and similar establishments, and landlords or hotels." *See* Plitt, Jordan, *Specific Policy Provisions Addressing Assault*, 9 Couch on Ins. § 127:22 (Nov. 2023 Update). The exclusion was developed by insurers so they could continue to insure these

establishments while simultaneously eliminating their exposure to liability arising out of violent acts—which often occur at these establishments. *See* Richmond, Douglas, *Examining Assault and Battery Exclusions in CGL Policies*, 58 Tort Trial & Ins. Prac. L.J. 23 (Nov. 23 Update).

Florida courts have routinely enforced the Assault and Battery Exclusion in negligence lawsuits involving stabbings. *See, e.g., Capitol Specialty Ins. Co. v. R.G. Rancho Grande Corp.*, 2010 WL 11597189, at *4 (S.D. Fla. Sept. 16, 2010) (No coverage under the Assault and Battery Exclusion for negligence lawsuit involving a patron of the insured restaurant who was stabbed by a fellow patron); *Tower Ins. Co. v. New York v. Blocker*, 2013 WL 3716397, at *4 (M.D. Fla. Jul. 15, 2013) (No coverage under the Assault and Battery Exclusion for negligence lawsuit arising out of a stabbing "because bodily injury that is causally connected to an assault and battery by any other person is excluded from coverage."); *Wilshire Ins. Co. v. Poinciana Grocer, Inc.*, 151 So.3d 55 (Fla. 5th DCA 2014) (No coverage under the Assault and Battery Exclusion for negligence lawsuit involving a trash collector who was stabbed by a patron of the insured grocery store).

Florida courts have also enforced the Assault and Battery Exclusion in lawsuits involving fights. *See, e.g., Britamco Underwriters, Inc. v. Zuma Corp.*, 576

So.2d 965 (Fla. 5th DCA 1991) (no coverage under Assault and Battery Exclusion for negligence lawsuit by a patron who a fellow patron beat at the insured's premises); *Miami Beach Entertainment, Inc. v. First Oak Brook Corp.*, 682 So.2d 161 (Fla.3d DCA 1996) (No coverage under the Assault and Battery Exclusion for negligence lawsuit involving a patron at the insured premises who was injured by a bottle thrown at him by a fellow patron); *Monture Trading Post, Inc. v. Century Sur. Co.*, 2006 WL 1884929 (M.D. Fla. July 7, 2006) (No coverage under the Assault and Battery Exclusion for negligence lawsuit involving patron of the insured billiard club who was beaten to death by a fellow patron).

Florida courts have enforced the Assault and Battery Exclusion in negligence lawsuits involving sexual assault and even unwanted kissing. *See, e.g., Doe v. Hudson Specialty Ins. Co.*, 719 Fed. Appx. 951 (11th Cir. 2018) (No coverage under the Assault and Battery Exclusion for negligent security lawsuit involving the claimant's sexual assault at the insured apartment complex); *Colony Ins. Co. v. Robles*, 2009 WL 10667581 (S.D. Fla. Sept. 29, 2009) (No coverage under the Assault and Battery Exclusion for negligence lawsuit involving a claimant who was kissed against her will by an employee of the insured school).

Most specifically in this matter, Florida courts have routinely enforced the Assault and Battery Exclusion in negligence lawsuits involving a shooting. *See, e.g., Evanston Ins. Co. v. S&Q Property Investments, LLC*, 2012 WL 4855537 (M.D. Fla. Oct. 11, 2012) (No coverage under the Assault and Battery Exclusion for negligence lawsuit involving a claimant who was shot and killed by a criminal trespasser at the insured apartment complex); *Seneca Specialty Ins. Co. v. 845 North, Inc.*, 2015 WL 3400415, at *4 (M.D. Fla. May 26, 2015) (No coverage under the Assault and Battery Exclusion "for claims arising from a nightclub shooting[.]"); *James River Ins. Co. v. O'Gallagher, LLC*, 2022 WL 2961024, at *1 (S.D. Fla. Jul. 19, 2022) (No coverage under the Assault and Battery Exclusion for negligence lawsuit where the claimant "was shot during an armed robbery" at the insured arcade).

In *S&Q Property*, 2012 WL 4855537, the claimant was shot and killed in an attack by a criminal assailant while at the insured apartment complex. The claimant sued the insured and alleged the incident was a direct and principal result of the insured's negligence. The lawsuit was tendered to the insurer, which denied coverage under the policy's Assault and Battery Exclusion. In pertinent part, the exclusion provided there was no coverage for bodily injury "arising …

out of Assault and/or Battery, or out of any act or omission in connection with the prevention or suppression of such acts …" *S&Q Property*, 2012 WL 4855537, at \*1.

In the coverage action that followed, the insurer moved for summary judgment and argued the policy did not afford coverage based on the allegations in the underlying complaint. The court agreed. The court turned to the tort definition of battery, which "consists of the infliction of a harmful or offensive contact upon another with the intent to cause such contact or the apprehension that such contact is imminent." *Id.* (citing *Quilling v. Price*, 894 So.2d 1061, 1063 (Fla. 5th DCA 2005)). The court also considered the meaning of the term in criminal law and observed that "battery occurs when a person: 1. Actually and intentionally touches or strikes another person against the will of the other person; or 2. Intentionally causes bodily harm to another person." *Id.* (citing Fla. Stat. § 784.03(1)(a)). Further, the "use of a deadly weapon in the commission of a battery elevates the crime to 'aggravated battery,' but the act still considered a battery." *Id.* (citing Fla. Stat. § 784.045(1)(a)).

Using those definitions, the court reasoned "the shooting death of [the claimant] plainly constituted a battery," and "[b]ecause the claims in the

underlying action arose out of a battery, the exclusion applie[d], regardless of whether the claims sound[ed] in negligence." *Id*.

In *845 North*, 2015 WL 3400415, two claimants were shot by a criminal assailant at the insured nightclub. In their lawsuits, they alleged the insured "failed to provide adequate security and failed to warn invitees and the public of numerous criminal incidents that had previously occurred on [the] premises." *Id*., at *1. The insurer denied coverage under the policy's Assault and Battery Exclusion, which precluded coverage for "damage or expense due to 'bodily injury' … arising out of or resulting from … Assault, Battery or Assault and Battery committed by any person … [or] The failure to suppress or prevent Assault, Battery or Assault and Battery by any person." *Id*., at *2.

In the ensuing coverage action, the insurer moved for summary judgment based on the application of the Assault and Battery Exclusion. The court agreed the exclusion applied. The court observed that the lawsuits alleged the claimants were "shot" at the insured nightclub and suffered damages as the result of the insured's negligence. *Id*., at *3. The shooting, according to the court, was clearly "harmful and offensive touching constituting a battery[.]" *Id*., at *4 (citing *Clarendon Am. Ins. Co. v. Miami River Club, Inc.*, 417 F. Supp. 2d 1309, 1313 (S.D. Fla.

2006)). The court accordingly held the allegations of the complaints "f[e]ll squarely within [ ] the Assault and Battery" Exclusion, which "preclude[d]any duty to defend or corresponding duty to indemnify." *Id*.

Applying the straightforward approach in those cases, there is no question Gaines's injuries here arose out of, were related to, and, in any way involved an assault and/or battery. Gaines alleges he was an invitee at the premises owned and operated by Millennia and Jernigan. (DE 24-2, ¶¶4, 8.) He alleges on 09/22/2023, "an armed assailant shot him several times." (*Id*., ¶9.) He blames Millennia and Jernigan for his injuries. According to Gaines, Millennia and Jernigan "did not have security measures to protect" people like him from this type of "attack." (*Id*., ¶14.)

All the allegations in Kinsale's complaint are deemed admitted based on the Clerk's default. *See Perez v. Wells Fargo*, 774 F.3d 1329, 1339 (11th Cir. 2014). The outcome of this action is so obvious that both Millennia and Jernigan stipulated there is no coverage under the policy they purchased. (DE 46.)

As a matter of law, this Court should find there is no coverage under the Assault and Battery Exclusion. *See Perrine Food Retailers, Inc. v. Odyssey Re (London) Ltd.*, 721 So.2d 402, 404 (Fla. 3d DCA 1998) ("An assault and battery exclusion in a

liability policy precludes coverage for the negligence of the insured which arises

as the result of the [claimant's] assault and battery.").

## CONCLUSION

For all the reasons discussed above, Kinsale is entitled to a final default

judgment.

Respectfully submitted,

/s/SERGIO BUENO
**SINA BAHADORAN**
Florida Bar No. 523364
Sina.Bahadoran@clydeco.us
**SERGIO BUENO**
Florida Bar No. 112401
Sergio.Bueno@clydeco.us

CLYDE & CO US LLP
1221 Brickell Avenue
Suite 1600
Miami, Florida 33131
T: 305.446.2646

## CERTIFICATE OF SERVICE

I CERTIFY that on the 18th day of September 2024, this document was

filed via the CM/ECF system. I further certify that I am unaware of any non-

CM/ECF participants.

/s/SERGIO A. BUENO
**SERGIO A. BUENO**